IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 19, 2002 Session

## STATE OF TENNESSEE v. JEFFREY DANA YORK

**Direct Appeal from the Circuit Court for Marshall County**
**No. 14718     Charles Lee, Judge**

---

**No. M2001-02956-CCA-R3-CD - Filed December 3, 2002**

---

The defendant was charged with twenty-four separate counts including one count of driving under the influence, nine counts of reckless endangerment involving a deadly weapon, one count of reckless driving, eight counts of aggravated assault, two counts of failure to give notice of an accident, two counts of evading arrest creating a risk of death, and one count of false imprisonment. Eight of the reckless endangerment and reckless driving counts merged with other charges. The defendant entered guilty pleas to the other sixteen counts. After a sentencing hearing, the trial court imposed an effective sentence of thirty years and six months. The defendant appealed the sentence as excessive, arguing that the trial court erred in calculating his total sentence. After review of the record, we affirm the judgments of conviction but remand for entry of corrected judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); Donna L. Hargrove, District Public Defender (on appeal and at trial); and Andrew Jackson Dearing, III, Assistant Public Defender (at trial), for the appellant, Jeffrey Dana York.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

According to the presentence report, the defendant, Jeffrey Dana York, picked his wife, Cindy Curry, up from work sometime after 4 p.m. on April 2, 2001. She said that he was upset and she could tell that he had been drinking, but he would not say what was upsetting him other than, "you are all a bunch of bitches." Curry tried to get out of the car, but the defendant pulled her back. According to Curry's statement, he then "started speeding down the road driving all crazy," as she pleaded with him to let her out of the car. Lewisburg police officers responded to a reckless driving call and, upon seeing the defendant's vehicle, turned on their lights and sirens. Instead of stopping, the defendant fled, crashing into a car stopped at a stop sign.

Officer Chris Steel, testifying at the sentencing hearing, described the ensuing chase of the defendant's vehicle. With his vehicle, Steel tried to block the defendant's vehicle from hitting a car which had stopped for a stop sign. However, the defendant's vehicle came around the police car and struck the stopped vehicle, which was occupied by Shelly Kousser and her ten-year-old daughter Courtney. Both were taken to the hospital and released that same day. This incident resulted in indictment counts 4, 5, and 6. The defendant's wife again tried to get out of the car, but he pulled her back and sped off.

With Officer Steel in pursuit, his siren and blue lights activated, the defendant ran a stop sign and proceeded "at a high rate of speed" through a hilly residential neighborhood. Because the chase was occurring at 4:30 p.m., the area was "busy because school [was] still in session and work [was] getting out." Apparently, as the defendant ran the stop sign, his vehicle became airborne and he struck an automobile occupied by Martin Zynda and his twenty-three-month-old son Travis, both of whom were subsequently taken to the hospital as a result. They were released that same evening. This collision resulted in indictment counts 9, 10, 11, and 12.

The defendant's striking the Zynda car pushed it into oncoming traffic, where it struck another vehicle head-on. This vehicle contained two young adults and two children, ages six and fourteen. All four were transported to a local hospital, with the fourteen-year-old then being transferred to Maury Regional Hospital, where she was released later that night. This collision resulted in indictment counts 15, 16, 17, 18, 19, 20, 21, and 22.

The defendant's vehicle went off the road and hit a tree, becoming wedged between the tree and a fire hydrant. As Officer Steel approached the vehicle, the defendant was trying to free it. His wife was still in the vehicle, "holding her head," and it appeared that her head had struck the windshield or dashboard. The defendant refused to get out of the vehicle or show the officers his hands. They pulled their weapons, but the defendant still refused to get out of his vehicle. When finally he got out of his vehicle, the defendant was "combatant, fighting" and the officers had to forcefully restrain him with handcuffs. Officer Steel then described what occurred after the defendant had been placed into a patrol car:

He was kicking the windows, banging his head against the windows, up against the cage, hollering and screaming. He had to be restrained several times, opening the door. We had to use our chemical weapons on him in the back of the car because he was kicking the back window out.

Officer Steel described the defendant's behavior at the hospital:

They had to give him a catheter, and he had gotten up and yanked it out. He was spitting blood and trying to get out of the emergency room. So they handcuffed him to the bed. And while he was in the bed handcuffed to the bed, he was doing flips with the handcuffs on his wrists. I guess the cuffs were spinning around his wrist. He was attempting to bite at his wrists to get the handcuffs off. So they had to give him several sedatives.

A blood sample of the defendant revealed an alcohol level of 0.20% and tested positive for marijuana.

According to the presentence report, the defendant made the following statement as to the incident:

On April the 2nd I was depressed about many problems I was having. Every way I turned I was getting deeper into debt like child support and other things. I went home and started drinking and blacked out and ended up causing a wreck. I never set out to hurt nobody [sic] or cause any harm. I was trying to get help through mental health but I didn't get the help I needed in tim [sic].

If I hadn't of [sic] been drinking I wouldn't be where I am now. I understand that what I did was wrong and I ask the victims to forgive me and pray that the court has mercy on me.

Those victims who provided a victim impact statement detailed their injuries. Martin Zynda reported that, as the result of his vehicle having been struck by that of the defendant, he had sustained a "severe sprain to left knee and left ankle and sever[e] bruising to chest and left arm." He was treated in the emergency room and underwent two weeks of physical therapy. He reported further that, as a result of the injuries, he lost his jobs and expended $5844.49 for car repairs and medical expenses. His son sustained "severe bruises on his chest and shoulders and stomach." The defendant's wife, Cindy Curry, reported that she sustained a "cracked bone in left foot, torn ligaments in right foot, bruised upper and lower arm, contusion to forehead, and infection in right foot." She said that she had to use crutches for two months to walk and took medication for pain and inflammation in both of her feet. She missed work for two and one-half months and was continuing

to pay the loan payments on the car operated by the defendant which was destroyed as the result of the incident.

According to the presentence report and judgments, the defendant has seven prior felony convictions, all in 1994: three convictions for theft of property $1,000 - $10,000, each resulting in a four-year sentence, and four convictions for "reckless endangerment - deadly weapon involved," each resulting in a two-year sentence. The reckless endangerment convictions were reported in the presentence report to have resulted from the defendant's "being involved in a hit and run accident which caused personal property damage and injuries to the occupants of the other vehicle." The defendant had been paroled in 1995, with the parole being revoked in 1997, apparently resulting in his being incarcerated until 1999.

## ANALYSIS

The only issue raised on appeal is whether the trial court erred in ordering that certain of the defendant's sentences be served consecutively.

### I. Standard of Review

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.;

Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

## II. Length of Sentence

On appeal, the defendant and the State disagree upon the sentenced imposed, the defense asserting that the effective sentence is sixteen years and six months, while the State computes the sentence to be thirty years and six months. The disagreement stems from the fact that there are a total of sixteen judgments, with different sets of sentences ordered to be served concurrently with each other yet consecutive to all other sets of convictions, all of which, in turn, are consecutive with each other. We have reviewed the trial court's ruling at the sentencing hearing, as well as the judgments, and compared the two. Based upon our analysis, it appears that the trial court sentenced the defendant as a Range II, persistent offender to an effective sentence of thirty years and six months, while the judgments provide for an effective sentence of sixteen years and six months as a multiple offender. Where there is a conflict between a judgment form and the transcript of the proceedings, the transcript controls. See State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991); State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985). Accordingly, the transcript from the sentencing hearing controls, and the defendant's effective sentence is thirty years and six months as a persistent offender. Before determining whether the trial court abused its discretion in ordering that certain of the sentences be served consecutively to others, we first will review the sentences imposed by the trial court at the conclusion of the sentencing hearing.

As a Range II, persistent offender, the trial court sentenced the defendant as follows:

| Count | Offense | Sentence |
|-------|---------|----------|
| 1 | Driving While Under The Influence | 11 months, 29 days |
| 2 | Reckless Endangerment with a Deadly Weapon | 3 years |
| 3 | Reckless Driving | merged |
| 4 | Aggravated Assault | 8 years |
| 5 | Reckless Endangerment | merged |
| 6 | Aggravated Assault | 8 years |
| 7 | Failure To Give Notice Of Accident | 30 days |
| 8 | Evading Arrest Creating Risk of Death | 3 years |
| 9 | Aggravated Assault | 8 years |
| 10 | Reckless Endangerment | merged |
| 11 | Aggravated Assault | 8 years, 6 months |
| 12 | Reckless Endangerment | merged |
| 13 | Failure To Give Notice Of Accident | 30 days |
| 14 | Evading Arrest Creating Risk of Death | 3 years |
| 15 | Aggravated Assault | 8 years |
| 16 | Reckless Endangerment | merged |
| 17 | Aggravated Assault | 8 years |

| | | |
|---|---|---|
| 18 | Reckless Endangerment | merged |
| 19 | Aggravated Assault | 8 years |
| 20 | Reckless Endangerment | merged |
| 21 | Aggravated Assault | 8 years |
| 22 | Reckless Endangerment | merged |
| 23 | Reckless Endangerment with a Deadly Weapon | 3 years |
| 24 | False Imprisonment | 11 months, 29 days |

At the sentencing hearing, the trial court ordered that the following groupings of counts should run concurrently one with the other: counts 4 and 6; counts 9 and 11; counts 15, 17, 19, and 21; counts 1, 2, 7, 13, and 14; and counts 23 and 24. The following counts were to be served consecutively: counts 4 and 6 to counts 9 and 11; which, in turn, were consecutive to counts 15, 17, 19, and 21; which, in turn, were consecutive to counts 1, 2, 7, 13, and 14; which, in turn, were consecutive to counts 23 and 24. This order calculates to a total sentence of thirty years and six months. We note that the trial court did not specify that count 8, for which the defendant was sentenced to three years imprisonment, was to be served consecutively to any of the other sentences. Therefore, by operation of law, it is served concurrently with the other sentences. See Tenn. R. Crim. P. 32(c)(1) ("Unless it is made to affirmatively appear that the sentences are consecutive, they shall be deemed to be concurrent.").

The disparity in sentencing between that ordered by the trial court during the sentencing hearing and that provided by the judgments stems from the fact that the latter, while providing for groupings of concurrent counts 1, 2, 7, 8, 13, and 14 to be consecutive to concurrent counts 15, 17, 19, and 21, with both to be consecutive to concurrent counts 23 and 24, does not connect them with counts 4 and 6, which are concurrent with each other but consecutive to counts 9 and 11, which are concurrent with each other. In other words, the judgments do not reflect the trial court's instructions during the sentencing hearing that there should be five groupings of indictment counts, all consecutive with each other, and that the defendant is a persistent offender. Since, as we have noted, the sentencing transcript prevails over the judgments, the defendant's effective sentence is thirty years and six months. Having made that determination, we now will ascertain whether the defendant was appropriately sentenced.

The presentence report and the judgments of previous convictions show that the defendant has seven felony convictions since 1994, four of which are for reckless endangerment.

In sentencing the defendant, the trial court found no mitigating factors applicable but applied the following five enhancement factors:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(4) A victim of the offense was particularly vulnerable because of age or physical or mental disability, including, but not limited to, a situation where the defendant delivered or sold a controlled substance to a minor within one thousand feet (1,000 ft.) of a public playground, public swimming pool, youth center, video arcade, low income housing project, or church;

(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;

(10) The defendant had no hesitation about committing a crime when the risk to human life was high; and

(16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

Tenn. Code Ann. § 40-35-114(1), (4), (8), (10), (16).

In determining the appropriate sentence for a felony conviction, the sentencing court, if there are enhancement factors but no mitigating factors, may set the sentence above the minimum in that range but still within the range. See Tenn. Code Ann. § 40-35-210(d) (Supp. 1999); State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). There is no mathematical formula of evaluating the enhancement factors to calculate the appropriate sentence. See generally id. "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76 (citations omitted). The defendant does not contest the enhancement factors, nor does he argue for the application of mitigating factors. In each of the felony cases, the defendant was sentenced within the range for a persistent offender, and we thus conclude that, as to each individual offense, the defendant was sentenced appropriately. We now will determine whether consecutive sentencing was appropriate or whether all sentences should be served concurrently, as the defendant asserts on appeal.

As a general rule, consecutive sentences are imposed at the discretion of the trial court upon its consideration of one or more of the following statutory criteria:

(1)    The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2)    The defendant is an offender whose record of criminal activity is extensive;

(3)    The defendant is a dangerous mentally abnormal person as declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)    The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)    The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)    The defendant is sentenced for an offense committed while on probation; or

(7)    The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. In ordering consecutive sentencing, the trial court utilized criteria one and four, finding "that the defendant is obviously a person whose criminal activity is extensive" and that the episode resulting in the latest convictions and at least three of his prior convictions "involved the threat of death or serious bodily injury[.]" The trial court also found "the defendant to be a dangerous offender" and that "incarceration is necessary to protect society."

The presentence report prepared following the defendant's 1994 traffic incident, resulting in four convictions for reckless endangerment with a deadly weapon involved,[1] details the facts of that matter:

Mr. York was operating a stolen vehicle on 31-A in Marshall County. The vehicle York was operating was traveling at a high rate of speed when it struck another vehicle in the rear causing extensive damage to that vehicle and injuries to it's [sic] occupants. Mr. York did not

---

[1]Five persons were in the vehicle struck by the stolen vehicle operated by the defendant in 1994, resulting in his being charged with five counts of reckless endangerment. He entered pleas of guilty to four counts of this indictment.

stop to check on the other parties, to exchange information, or notify
the proper authorities.

According to the presentence report, the defendant was placed on parole from these sentences on September 29, 1995. Subsequently, he was arrested on October 6, 1996, and charged with failure to obey a traffic control device and failure to report an accident, both of which resulted in fines. He next was arrested on January 18, 1997, charged this time with reckless endangerment and evading arrest. He was convicted of these offenses on February 18, 1997, receiving concurrent sentences of eleven months and twenty-nine days. On February 28, 1997, his parole was revoked, and, apparently, he then remained incarcerated until January 21, 1999, when his sentences expired. According to testimony presented at the sentencing hearing, the defendant has "been on some form of alternative release, including parole" on five occasions. The defendant told Judy Byrd, the Tennessee Department of Probation and Parole investigating officer who prepared the presentence report, that he had consumed alcoholic beverages and used marijuana "on a daily basis since age ten."

It is abundantly clear from the record that the defendant is a dangerous offender with little or no regard for human life and with a propensity to utilize a vehicle in a deadly fashion. That fact, in addition to his reported daily use of alcohol and marijuana, supports consecutive sentencing.[2]

### III. Calculation of Sentence

As we have stated previously, the judgments do not conform to the instructions of the trial court at the sentencing hearing. Accordingly, we remand this matter for entry of corrected judgments which reflect the orders of the trial court at the sentencing hearing.

### CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the trial court's sentencing of the defendant but remand for entry of corrected judgments reflecting the sentences imposed at the sentencing hearing. Additionally, we remand for correction of the judgments for counts 8 and 14 to reflect that the pleas of guilty were to evading arrest as a Class E felony, as stated in the Petition to Enter Plea of Guilty, and not as a Class D felony, which both judgments currently provide. The judgments should also reflect that the defendant is a persistent offender, as determined by the trial court.

_____
ALAN E. GLENN, JUDGE

---

[2]We note that the defendant also received consecutive sentences in 1994 for certain of his theft and reckless endangerment convictions.